UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA <u>ex rel.</u> HAROLD SALOMON,<br><br>    Plaintiff,<br><br>v.<br><br>DERISH M. WOLFF,<br><br>    Defendant. | Civil Action No.: 2:17-cv-05456-ES-CLW<br><br><u>OPINION</u><br><br><u>FILED UNDER SEAL</u><br><br><u>NOT FOR PUBLICATION</u> |

### I.  Introduction

This matter comes before the Court in connection with the Court's December 10, 2020 Opinion (the "Opinion") and Order (the "Order") on the discovery motions of defendant Derish M. Wolff's ("Wolff") and plaintiff United States of America <u>ex rel.</u> Harold Salomon (the "Government"). ECF No. 271-72. The court will not repeat all the arguments and conclusions contained in the Opinion and Order, familiarity with which is presumed, but will briefly summarize the issues directly relevant here.

### II.  Background

#### a.  Wolff's Motion

Wolff's motion [ECF No. 243] grew from three affirmative defenses seeking dismissal on the ground that the Government committed prosecutorial misconduct and deprived Wolff of his due process rights by keeping this case sealed while actively engaging in discovery and prosecuting this matter against him. ECF No. 143 at Fifth, Sixth, and Seventh Separate Defenses (the "Affirmative Defenses"). Significantly, in denying the Government's motion to strike the Affirmative Defenses, the Honorable Jose L. Linares expressly held that Wolff is entitled to discovery on them, writing that "[i]f Defendant can prove through discovery that the Government engaged in procedural misconduct or failed to afford Defendant due process, then Defendant can

provide a plausible defense to the Government's civil FCA action. <u>This is a material fact that must be fleshed out during discovery</u>." ECF No. 194 at 12 (emphasis added).

Relying on this holding, Wolff moved for production of certain documents he claimed were relevant to the Affirmative Defenses and which the Government withheld on the basis of the attorney-client privilege ("ACP") and/or as attorney work product ("WP"). The Court generally denied the motion, with two caveats relevant here. First, as to materials withheld under the ACP, it directed "the Government to provide a limited sampling of documents listed in its privilege log for <u>in camera</u> review so that the Court may determine if they contain information that gives sufficient 'colour to the charge' that [the crime-fraud exception applies because] the Government acted improperly in keeping this case sealed while actively prosecuting the charges against Wolff." Opinion at 24. Similarly, concerning materials withheld as WP but not under the ACP, the Court wrote "that the proper treatment for [such] materials . . . [is] <u>in camera</u> inspection by the Court." <u>Id.</u> at 28; <u>see also</u> Order. After considerable debate as to the scope of <u>in camera</u> review, the Court has received and reviewed three categories of Government documents, discussed <u>infra</u>.

  b. <u>The Government's Motion</u>

The Opinion and Order also addressed the Government's motion to compel Wolff to provide a privilege log. The Court granted this motion in part. Namely, Wolff was directed to "produce a privilege log in accordance with FED. R. CIV. P. 26(b)(5)(A) describing all communications between Wolff and his counsel or among Wolff's counsel which are relevant to [the A]ffirmative [D]efenses." Order at 2. As pertinent here, the Government argues that Wolff did not timely comply with this directive and that the log he eventually produced was substantively deficient. As a result, the Government seeks a finding of waiver of privileges and protections over

2

documents Wolff has withheld from production. As discussed below, the Court will deny the Government's waiver argument.

### III.  *In Camera* Review of Government Documents

####   a. **Documents Claimed Protected by the Attorney-Client Privilege**

#####     i. **Legal Standards**

The first group of items at issue is a sampling of documents that the Government claims are protected under the ACP.[1] The Court has held that materials such as these, consisting of inter-attorney communications and communications between Government attorneys and Relator's counsel may, as a general matter, be protected by the ACP, assuming, of course, that the prerequisites for the privilege are met. See Opinion at 8-13. Now that a sampling of the disputed material has been presented, the Court has screened it to ensure that the ACP applies in the first instance. Finding this to be the case,[2] the Court proceeds to the crime-fraud analysis.

The initial requirement for Wolff to obtain these items via the crime-fraud exception is for the in camera review to reveal that (i) the Government was engaging or intended to engage in a crime or fraud[3] at the time of the communication in question; and (ii) the communications at issue were in furtherance of the continuing or intended crime or fraud. Id. at 13 (citing In re Grand Jury Subpoena, 223 F.3d 213, 217 (3d Cir. 2000)). If so,

> then "[t]he Court then must determine if the [Government can] . . . give[] a reasonable explanation of its conduct." After giving the Government the opportunity to be heard, "the court must decide if the evidence . . . shows that it is more likely than not that the

---

[1] These items are labeled as USDW_0036973-75, 0036979-81, 0037154-56; and 0037160-62; and USDWPriv_0000001, 16, 17, 20, 21, 24-26, 28-36, 45, 46, 56, 57, 59, 61-70, 82-85, 92, 93, 101, and 103-10.

[2] This excepts certain documents, such as internal LBG memoranda obtained by the Government, that appear to have been attached to relevant emails but do not implicate the current analysis.

[3] The purported crime or fraud presently at issue is the misconduct alleged in the Affirmative Defenses.

> [Government] sought or used legal advice to commit or try to commit a crime or fraud." If the explanation rebuts the prima facie case then the privilege is upheld; if not, the privilege is pierced.

Id. at 15 (citations omitted).

### ii. Analysis

Most ACP documents reviewed by the Court do not raise any concerns of prosecutorial misconduct. A small number of items, however, give the Court pause and therefore warrant further exploration. Accordingly, the Court will direct the Government to "give[] a reasonable explanation of its conduct" reflected in these materials.

The Court notes the following guidance from the Third Circuit:

> For in camera inspection, . . . [t]he court may decide on this submission alone whether a factual basis is present to support a good faith belief by a reasonable person that the materials may reveal evidence of a crime or fraud. Deciding whether the crime-fraud exception applies is another matter. If the party seeking to apply the exception has made its initial showing, then a more formal procedure is required than that entitling [the Government] to in camera review.[4] The importance of the privilege . . . as well as fundamental concepts of due process require that the party defending the privilege be given the opportunity to be heard, by evidence and argument, at the hearing seeking an exception to the privilege. . . . [T]herefore . . . where a fact finder undertakes to weigh evidence in a proceeding seeking an exception to the privilege, the party invoking the privilege has the absolute right to be heard by testimony and argument.

Haines v. Liggett Grp., Inc., 975 F.2d 81, 97 (3d Cir. 1992) (citations omitted); see, e.g., United States v. Trenk, 385 F. App'x 254, 257-59 (3d Cir. 2010) (remanding case for argument against crime-fraud exception). The Court will order an ex parte hearing to this effect.

---

[4] To this end, the Court clarifies that the flagged items do not, as a matter of law, demonstrate misconduct warranting a piercing of the ACP; they merely provide a good faith basis for such a conclusion and therefore trigger the Court's obligation for further inquiry.

4

### b. **Documents Claimed Protected as Attorney Work Product**

### i. **Legal Standards**

The second group of documents is those over which the Government claims only WP protection.[5] Here, assuming WP protection attaches, it may be overcome in the case of ordinary (or "fact") work product, if Wolff can demonstrate a substantial need and that, without undue hardship, he cannot otherwise obtain these materials or their substantial equivalent. In the case of opinion (or "core") work product—which "encompasses the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation"—there first must exist rare and exceptional circumstances warranting production. Opinion at 26-27 (quoting FED. R. CIV. P. 26(b)(3)(A) and In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003)). The exceptional circumstances in this case are that the Government's alleged activities are at issue by way of the Affirmative Defenses (coupled with Judge Linares's holding that Wolff is entitled to discovery thereon).

Such circumstances open the door for opinion work product. But for these materials to cross the production threshold, Wolff also must show a compelling need for them. See, e.g., Allergan Inc. v. Pharmacia Corp., 2002 U.S. Dist. LEXIS 19811, at *3 (D. Del. May 17, 2002) ("An attorney's opinion work product is discoverable where such information is directly at issue and the need for production is compelling.") (quoting (Bio-Rad Labs., Inc. v. Pharmacia, Inc., 130 F.R.D. 116, 122 (N.D. Cal. 1990)).[6] Courts in this district hold that "a compelling need exists 'whenever information is in the exclusive control of the party from whom discovery is sought.'"

---

[5] The materials at issue here are USDWPriv_0000003-05; 0000111-14; and 000116-18.

[6] The crime fraud exception can also pierce this protection. However, the Court does not find these materials justify application of the exception.

Mondis Tech. Ltd. v. LG Elecs., Inc., 2017 U.S. Dist. LEXIS 151418, at *12-13 (D.N.J. Sep. 19, 2017) (quoting Environ Prods., Inc. v. Total Containment, Inc., 1996 U.S. Dist. LEXIS 12336, at *13 (E.D. Pa. Aug. 22, 1996)); e.g., Bolus v. Carnicella, 2020 U.S. Dist. LEXIS 206873, at *17 (M.D. Pa. Nov. 5, 2020) (same).[7]

As above, the Court previously inferred, sight unseen, that the documents at issue seem to constitute opinion work product. Now that the Court has reviewed these materials, it may make a more informed statement as to this classification. This is a notoriously confounding undertaking. As noted by the Eleventh Circuit, "the task of drawing a line between what is fact and what is opinion can at times be frustrating and perplexing." Florida House of Representatives v. U.S. Dep't of Commerce, 961 F.2d 941, 947 (11th Cir. 1992). Another district court has similarly noted that "'fact' and 'opinion' labels are [not very] useful because even if it can be agreed that a collection of statements constitute 'facts,' the collection itself might nonetheless reveal an attorney's mental impressions of the case, thereby converting the information into 'opinion' work-product." Hausman v. Holland Am. Line-U.S.A., 2015 U.S. Dist. LEXIS 165179, at *5 (W.D. Wash. Dec. 9, 2015) (citing cases). In other words, the line between ordinary and opinion work product is not only thin, but sometimes indiscernible.

With this in mind, the Court will apply an "opinion" or "fact" label to the documents at issue, while also recognizing the need for a holistic approach as to whether their WP protection should be overcome. See, e.g., United States v. Amerada Hess Corp., 619 F.2d 980, 987 (3d Cir.

---

[7] Notwithstanding these constructions, the Court is of the opinion that a showing of a compelling need also entails some degree of "need" in the colloquial sense. Otherwise, this prong could be met simply if information is in the resisting party's possession. This would result in a lower standard for production of opinion work product than for fact work product, which as noted, requires a showing of a "substantial need." The Bolus court aptly captured this framework as follows: "Plaintiffs have established a compelling need for this information because they will otherwise be unable to access it. Because Defendants' legal strategies in the criminal prosecution form the heart of Plaintiffs' case, the Court finds that Plaintiffs have demonstrated a sufficiently compelling need." 2020 U.S. Dist. LEXIS 206873, at *18.

1980) ("[A]pplication of the [work product] rule depends upon the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, . . . the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources. . . . Where . . . the work product in question is of rather minimal substantive content, and presents none of the classic dangers to which the [work product] rule is addressed, the . . . showing of need can be comparatively lower.") (citing In re Grand Jury Investigation, 599 F.2d 1224, 1231 (3d Cir. 1979)); Opinion at 25-26 (applicability vel non of this "qualified privilege depends on the information being sought and the adversary's need for the information)" (quoting George v. Siemens Indus. Automation, Inc., 182 F.R.D. 134, 140 (D.N.J. 1998) (citations omitted).

    ii.  **Analysis**

As a threshold matter, and with one exception noted at the end of this discussion, WP protection attaches to these materials, as they appear to have been "prepared in anticipation of litigation or for trial by or for [the Government] or its representative". FED. R. CIV. P. 26(b)(3)(A). This finding comes with a caveat, however: certain documents do not have dates attached to them. Accordingly, it is unclear whether they may bear upon the Affirmative Defenses, which concern the Government's alleged activities from 2006 through 2016. See Affirmative Defenses; ECF No. 243-1 at 6-7 (discussing alleged misconduct during this period). The Court will direct the Government to provide the dates these documents were created. The analysis that follows assumes that all the documents fall within the relevant period.

Most of the WP documents are to-do lists, a categorization that provides little help in classifying them as opinion or fact work product. See FEC v. Christian Coal., 178 F.R.D. 456, 469 (E.D. Va. 1998) ("One 'To Do List' might include, for example, a reminder to '(1) interview the

defendant's parents, and (2) request psychological report,' and another 'To Do List' might simply include a reminder to '(1) shepardize the case law, and (2) check local rules for deadlines.' Obviously, these two lists would not both be considered opinion work product."). Closer examination reveals these materials cataloging tasks such as meeting with government officials, advancing prosecution of Wolff and other purportedly culpable parties, obtaining financial and other information, researching legal issues, exploring settlement, and subpoenaing and interviewing witnesses.

The Court finds that the to-do lists are opinion work product. Even if they merely recite facts as to what the Government sought to accomplish at a given stage in this litigation, these facts "tend[] to indicate the focus of [the Government's] investigation, and hence, [its] theories and opinions regarding this litigation." Better Gov't Bureau v. McGraw (In re Allen), 106 F.3d 582, 607 (4th Cir. 1997) (citing cases); contra, e.g., Amerada Hess, 619 F.2d at 987-88 (where motion to compel centered on company's internal investigation, "[i]n this case the list of interviewees is just that, a list. It does not directly or indirectly reveal the mental processes of the [company's] attorneys").

As a result, the inquiry becomes (i) whether this is an exceptional case in which the information in the to-do lists is at issue in the Affirmative Defenses; and (ii) Wolff has a compelling need for such information. The Court answers both questions in the affirmative. As to the first, the Affirmative Defenses allege, for example, the Government obtaining discovery, attempting to negotiate settlement, and "pick[ing] off" defendants while the qui tam complaint remained sealed. Judge Linares has held unequivocally that Wolff is entitled to discovery on these matters. There is perhaps no better type of document than these to enable Wolff to "flesh[ ] out"

the Government's alleged misconduct[8] while also not overly compromising the Government attorneys' thought processes. The "compelling need" factor likewise is satisfied, as information of this sort is in the Government's exclusive control and is needed by Wolff to launch a meaningful inquiry into the issues raised in the Affirmative Defenses. The Court therefore will order production of the Government's to-do lists.

Also attached here is an outline of questions ostensibly drafted in preparation for an interview of Relator Salomon. This likewise is opinion work product. See, e.g., O'Connell v. Smith, 2014 U.S. Dist. LEXIS 198901, at *20-21 (C.D. Cal. Aug. 4, 2014) (documents reflecting witness interview strategy constitute opinion work product) (citing Kintera, Inc. v. Convio, Inc., 219 F.R.D. 503, 507 (S.D. Cal. 2003)). The Court will not order production of this material. First, Wolff is not hamstrung in proving the Affirmative Defenses without this window into the topics discussed between Salomon and the Government attorneys (indeed, Wolff likely can infer what was discusse between them). Second, these notes speak to information the Government attorneys gleaned from a relator—with whom the Government shares a common interest, see Opinion at 11-13—as opposed to the "unchecked discovery" of which Wolff complains. ECF No. 243 at 14.

Finally, the Government has submitted a memorandum summarizing steps taken and information learned in the Government's investigation and prosecution of Wolff. There is no indication what this document is, and in particular, whether it was prepared in anticipation of litigation. Therefore, the Court is unable to determine whether WP applies to it in the first instance. The Court will direct the Government to provide such information.

---

[8] Perhaps counterintuitively, the same characteristic that qualifies these items as opinion work product—their reflection on the focus of the Government's investigation—also makes them prime material for Wolff's inquiry into the misconduct alleged in the Affirmative Defenses.

### c. Documents Claimed Protected by the Attorney-Client Privilege and as Attorney Work Product

#### i. Legal Standards

The third group of documents is something of a hybrid of the above categories. Here the Government claims both ACP and WP protection, and Wolff argues that the ACP does not apply.[9]

The Court addresses these materials in several steps. Applying the standards stated above, it first must determine the threshold issue of whether WP protection attaches (and if so, whether the materials are opinion or fact work product). If WP applies, the next question is whether such protection is overcome. If not, the materials are protected as WP. If so, the Court must consider whether the ACP attaches. If not, the materials are discoverable. If so, then the Court decides whether there are some indicia that the communication was used in furtherance of a crime or fraud. If not, the materials are protected by the ACP. If so, the Government will be directed to explain its conduct as discussed above. As will be seen, most of these materials are non-discoverable.[10]

#### ii. Analysis

USDWPriv_00000014 is an email from a Government attorney discussing legal analysis and litigation strategy, and thus is opinion work product. As this information does not appear to support the Affirmative Defenses, it is not "at issue" for purposes of this analysis. To the extent

---

[9] The materials at issue here are USDWPriv_00000014-15, 115, and 119-22.

[10] An important analytical note is in order here. The standards relevant to overcoming WP and ACP are very similar, and therefore easily conflated. But they are notably different. In the present context, obtaining opinion work product requires a showing that the information to be discovered is at issue, as well as a compelling need for it. See supra. ACP entails a similar, but parallel, inquiry; namely, that there is "colour to the charge that the attorney-client communication was used in furtherance of a crime or fraud," such that the Court should direct the Government to justify its conduct. In other words, defeating opinion work product protection requires Wolff to show he needs access to these documents to prove the Affirmative Defenses. To overcome the ACP, however, the documents themselves must put some meat on the bones of the Affirmative Defenses. This is notable because it results in the prospect for something of a middle ground: that is, documents overcoming WP protection, but being shielded from discovery by ACP — despite the fact that both protections are sought to be overcome through evidence of the same alleged Government misconduct.

any relevant information may exist here, the ACP also protects this document, and because there are no indicia of fraud, that privilege is not overcome by the crime-fraud exception. This document is protected from disclosure.

USDWPriv_00000015 is an excel spreadsheet attached to the prior document, providing damages calculations. Whether classified as opinion or fact work product, as above, this document will do nothing to advance the Affirmative Defenses and is protected by the ACP. It therefore is protected from disclosure.

USDWPriv_00000115, a memorandum discussing the Government's investigation, is textbook opinion work product. Some of this information may overcome WP protection since this investigation is at issue in the Affirmative Defenses and Wolff arguably has a compelling need for such information. However, this document also is protected by the ACP, as it is an inter-attorney communication that appears to reflect information received from a client and/or geared toward the provision of legal advice. See Opinion at 8-11. As there are no indicia of fraud giving rise to the crime-fraud exception, the ACP protects this document from disclosure.

USDWPriv_00000119 is an email among Government attorneys containing legal theories, and therefore is opinion work product. As above, nothing herein is at issue in the Affirmative Defenses, the document is protected by ACP because it contains legal advice, and that protection is not overcome by the crime-fraud exception. This document is protected from disclosure.

USDWPriv_00000120 is a timeline of events pertaining to LBG. Most of this document is immaterial because it concerns a period predating that at issue in the Affirmative Defenses. To the extent this document discusses the relevant period, it is protected by the ACP and therefore is protected from disclosure.

USDWPriv_00000121-22 are an internal personnel email and a redacted attachment sent by a Government attorney to assistant directors of the DOJ fraud section. The email is ministerial, and the attachment includes a very broad description of efforts taken toward prosecuting Wolff. While the Court appreciates the Government's concern that counsel had an expectation of privacy when drafting a report to be used in connection with an annual evaluation, that expectation alone does not create WP or ACP protection. To the contrary, this document was prepared neither in anticipation of litigation nor for the purpose of providing legal advice. See, e.g., IQVIA, Inc. v. Veeva Sys., 2019 U.S. Dist. LEXIS 80101, at *10-11 (D.N.J. May 13, 2019) ("[T]he Third Circuit . . . has been loath to construe the [attorney-client] privilege broadly and has viewed what assists an attorney in rendering legal advice narrowly.") (citing, e.g., United States v. Rockwell International, 897 F.2d 1255, 1264 (3d Cir. 1990) that "most vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer"). Additionally, the non-redacted information here concerns Wolff's case, not internal personnel matters. Therefore, the email is protected from disclosure and the attachment is discoverable.

### IV. The Government's Waiver Argument

The Government seeks a finding that Wolff has waived the protections he has claimed over documents withheld from disclosure on the basis of privilege or other legal protections. ECF No. 281, 287. This argument initially was grounded in Wolff's purported failure to timely submit a privilege log after the Court issued its December 2020 Opinion and Order. See Opinion and Order; ECF No. 281. Following Wolff's production of a log in March of this year, the Government also has contended that a finding of waiver is warranted because Wolff's log is substantively deficient. ECF No. 287.

The Court will deny this request, primarily because the Opinion and Order did not set a date certain by which Wolff was to produce a privilege log. As explained in Drone Techs., Inc. v. Parrot S.A., 2015 U.S. Dist. LEXIS 185516 (W.D. Pa. Feb. 20, 2015),

> [c]ourts in this Circuit generally apply the severe sanction of privilege waiver only when a party fails to timely disclose a privilege log pursuant to a Court-ordered deadline. Here, the Court did not establish a date-certain for the parties' exchange of privilege logs. The sanction of privilege waiver and "preventing a party from asserting the attorney-client privilege is a legitimate sanction for abusing the discovery process . . . [but] [d]isclosure is a serious sanction, [and] one that may be imposed only if the District Court finds bad faith, willfulness, or fault."

Id. at *10-11 (quoting In re Teleglobe Comms. Corp., 493 F.3d 345, 386 (3d Cir. 2007) (emphasis added) (citation omitted)). To this end, the Government largely cites out-of-circuit authority in favor of this argument, ECF No. 281 at 2, with one notable—and illustrative—exception being Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc., 2000 U.S. Dist. LEXIS 11961 (E.D. Pa. 2000), where privileges were waived after "the plaintiff produced the log nearly two months after the court's ordered date." Rhoads Indus. v. Bldg. Materials Corp. of Am., 254 F.R.D. 216, 221 (E.D. Pa. 2008) (discussing Get-A-Grip). Wolff has not missed a Court-ordered deadline, nor does the record reveal bad faith, willfulness, or fault warranting the severe sanction of waiver.

As to the log's substance, the Court agrees with the Government that Wolff's submission is incomplete, with certain portions of Wolff's spreadsheet simply being empty. See ECF No. 287-1. Naturally, if he has not done so already, Wolff should be compelled to provide the outstanding information. Concerning the Government's more global complaints about the log's completeness, the Court notes the following from Rule 26's advisory committee notes:

> [t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are

13

> withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.

FED. R. CIV. P. 26(b)(5), 1993 Adv. Comm. Note. With this malleable standard in mind, and upon review of Wolff's log containing several hundred (mostly complete) entries, the Court does not find that Wolff's log is so deficient to support a finding of waiver. However, to ensure that the Government obtains the information to which Rule 26 entitles it, the Court will set a schedule for the parties to address any outstanding concerns as to the substance or completeness of Wolff's privilege log.[11]

**V.   Conclusion**

An Order consistent with this opinion follows.

Dated: June 30, 2021

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J

---

[11] The Court emphasizes that it expects the parties to resolve, or at least substantially narrow, any such issues without resort to further Court intervention.