UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA *ex rel.* HAROLD SALOMON, **Plaintiff,** v. DERISH M. WOLFF, **Defendant.** | Civil Action No.: 2:17-cv-05456-ES-CLW <br><br> **OPINION** <br><br> **FILED UNDER SEAL** <br><br> **NOT FOR PUBLICATION** |
|---|---|

## I.  Introduction

This matter is before the Court on the motion of plaintiff United States of America (the "Government") seeking a protective order precluding the depositions of the Government's counsel in this action. ECF No. 318. The Honorable Esther Salas has referred the motion to the undersigned. The motion is fully briefed, and the Court decides it without oral argument. For the reasons set forth below, the Government's motion is GRANTED IN PART AND DENIED IN PART.

## II.  Background

As the Court presumes the parties' familiarity with the facts underlying this matter, it will recite them briefly and only as necessary to the instant application. Defendant Derish M. Wolff ("Wolff") has asserted affirmative defenses (the "Affirmative Defenses") grounded in the Government's alleged prosecutorial misconduct primarily consisting of the Government keeping the case under seal for a period of ten years while, according to Wolff, the Government actively prosecuted it against him. *See* ECF No. 143 at Fifth, Sixth, and Seventh Separate Defenses. In July

2018 the Honorable Jose L. Linares denied the Government's motion to strike the Affirmative Defenses, writing that "[i]f Defendant can prove through discovery that the Government engaged in procedural misconduct or failed to afford Defendant due process, then Defendant can provide a plausible defense to the Government's civil FCA action. This is a material fact that must be fleshed out during discovery." ECF No. 194 at 12.

Wolff then moved to compel production of certain discovery pertaining to the Affirmative Defenses which the Government had withheld on the basis of the attorney-client privilege and as attorney work product. ECF No. 243. As to the attorney-client privilege, the Court reviewed a sampling of documents *in camera* and conducted an *ex parte* hearing with the Government addressing Wolff's contentions that the Government's actions warranted a piercing of the privilege by way of the crime-fraud exception. ECF No. 271-72, 295-96. The Court ultimately denied Wolff's request to pierce the privilege. ECF No. 331.[1] Concerning work product, the Court ruled that, as a general matter, Wolff may be entitled to both fact and opinion work product, since the Affirmative Defenses place "the activities of counsel . . . directly at issue." ECF No. 271 at 27-28 (quoting *United States v. Exxon Corp.*, 87 F.R.D. 624, 639 (D.D.C. 1980)).

The Government's current motion arises from Wolff's requests to depose current Department of Justice Senior Trial Counsel Russell Kinner and former Assistant United States Attorney and current Maryland Circuit Court Judge Michael

---

[1] At the time the instant motion was briefed, this decision was still pending.

DiPietro.[2] The parties do not dispute that Mr. Kinner and Judge DiPietro provided to the Government substantial legal representation in the prosecution of this matter against Wolff.[3] Wolff wishes to depose Mr. Kinner and Judge DiPietro to garner facts geared toward proving the Affirmative Defenses. *See generally* ECF No. 324. He seeks testimony regarding the following topics:

1. The Government's control of or involvement in [this] action prior to the filing of its Complaint-In-Intervention.

2. Participation by Government attorneys in [this] action prior to the filing of a Complaint-In-Intervention by the United States.

3. Participation by Government attorneys in attempts to settle any part of [this] action prior to the filing of a Complaint-In-Intervention by the United States.

4. Review, comment, and/or revision by Government attorneys of pleadings prepared by the Relator, Harold Salomon, in [this] action, prior to the filing of a Complaint-In-Intervention by the United States.

5. The preparation, content, and filing of sealing applications in [this] action, including any representations made therein.

---

[2] The Government also seeks a prospective protective order barring the depositions of other Government attorneys whose depositions may be sought by Wolff. *See* Section V, *infra*.

[3] Wolff argues that the concerns attending to depositions of counsel are absent here because Mr. Kinner and Judge DiPietro are not identified as counsel of record for the Government. This argument is belied by Wolff's efforts to depose Mr. Kinner and Judge DiPietro in the first instance. There is no way Mr. Kinner and Judge DiPietro would be positioned to provide meaningful testimony as to the Government's prosecution of this matter if they were not actively and intimately involved in it. *See, e.g.*, ECF No. 324 at 2 (Mr. Kinner and Judge DiPietro are "uniquely situated" to testify as to "the crux of the alleged misconduct"). Wolff provides no authority for the notion that the relevant considerations apply only to counsel who have entered a formal notice of appearance. In either event, to the extent he will continue to represent the Government in this matter, Mr. Kinner is directed to promptly file an appearance.

6. Communications between Government civil attorneys and any defendant in [this] action (or his counsel), prior to the filing of a Complaint-In-Intervention by the United States.

7. The Separate Defenses alleged by the Defendant, Derish M. Wolff, in [this] action.

8. Any involvement by Government civil attorneys, or Government attorneys with whom they worked, in:

a. recommending or effectuating Derish Wolff's recusal from certain business activities at the Louis Berger Group and/or Berger Group Holdings ("LBG') in 2009;

b. recommending or effectuating Derish Wolff's termination from LBG in 2010; or

c. recommending or effectuating LBG's efforts to escrow moneys to be paid to Derish Wolff by LBG in 2010, or otherwise to impair or delay those payments.

ECF No. 318-2, 318-3.

### III. **Legal Standard**

The parties dispute the legal standard applicable to the Government's motion. The Government argues the Court should apply the test set forth by the Eighth Circuit Court of Appeals in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), under which "depositions of opposing counsel are permissible only if: '(1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information sought is crucial to the preparation of the case.'" *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, 2017 WL 3116284, at *2 (E.D. Pa. July 21, 2017) (quoting *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385 (E.D. Pa. 2006)). Importantly, under *Shelton*, "[t]he party seeking to take the deposition of opposing counsel bears the burden of establishing that the three criteria

are satisfied." *Ed Tobergte Assocs. Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 555 (D. Kan. 2009) (citing cases). Wolff contends that the Court should reject *Shelton* and assess the motion under the more solicitous FED. R. CIV. P. 26.

The Court agrees with the Government on this point. As it observed in *Mondis Tech. Ltd. v. LG Elecs., Inc.*, 2017 WL 4155121 (D.N.J. Sept. 19, 2017), *aff'd*, 2017 WL 5495523 (D.N.J. Nov. 15, 2017), "[t]his District, like many others, uses the *Shelton* factors when considering whether an attorney should be deposed." *Id.* at *2. Wolff's limited authority to the contrary is largely inapposite and appears to embrace the minority view in this circuit. *See, e.g.*, *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) (declining to apply *Shelton* because "*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case"); *see also* ECF No. 319 at 11-12 (collection of cases applying *Shelton*). Wolff also cites this Court's decision in *Mondis* to suggest *Shelton* does not apply here, writing that the Court "allow[ed an] attorney deposition and reserve[ed] application of the Shelton factors to specific objections". ECF No. 324 at 9. This is a patent misconstruction of *Mondis*, where the Court expressly applied the *Shelton* factors and in doing so, wrote that "[i]f certain questions are asked that are privileged, [the deponent] will be free to object." 2017 WL 4155121, at *5.

It is true, as Wolff states, that *Shelton* upends Rule 26's presumption in favor of discovery and places the burden on the party seeking the deposition to justify it. But this is a good thing. As observed in *Stavropolskiy*,

> We agree with Plaintiffs that the *Shelton* rule provides the appropriate framework for analysis in these cases. By placing the burden on the party seeking to depose opposing counsel, the *Shelton* rule better safeguards the considerable policy concerns that arise when a litigant attempts to depose its opponent's counsel of record. *See Shelton*, 805 F.2d at 1327 ("Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation."); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-81 (D.D.C. 2011) ("Allowing depositions of opposing counsel, even if these depositions were limited to relevant and non-privileged information, may disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients."). And . . . the *Shelton* rule has been endorsed by three Courts of Appeals.

2017 WL 3116284, at *2.

The Court finds these concerns well-founded and best served by an application of the *Shelton* factors to the present motion. It adds that while "the general rule is that the deposition of counsel to an adversary is disfavored", *In re Plastics Additives Antitrust Litig.*, 2005 WL 8149514, at *3 (E.D. Pa. Aug. 9, 2005) (collecting cases), this general presumption is somewhat less robust where, as here, attorney conduct is at issue in the litigation. *Stepanski v. Sun Microsystems, Inc.*, 2011 WL 8990579, at *18 (D.N.J. Dec. 9, 2011) ("*Absent an attorney's advice being made an issue in the case*, courts should exercise great care before permitting the deposition of an attorney") (emphasis added) (quoting *Linerboard*, 237 F.R.D. at 385 and citing cases), *report and recommendation adopted*, 2012 WL 3945911 (D.N.J. Sept. 10, 2012). Nonetheless,

6

Wolff must satisfy *Shelton* to defeat the Government's motion. The Court therefore proceeds to the *Shelton* factors.[4]

## IV. *Shelton* Analysis

### a. Whether Other Means Exist to Obtain the Information

The first *Shelton* factor requires Wolff to demonstrate that no other means exist to obtain the information sought from Mr. Kinner and Judge DiPietro. Of note, "there is no case law indicating that [Wolff] must exhaust every available option before requesting the deposition of [Mr. Kinner and Judge DiPietro]." *Mondis*, 2017 WL 4155121, at *3 (citing *Alcon Laboratories, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 341-43 (S.D.N.Y. 2002)). The Court first considers the Government's argument on this element as to Wolff's sixth and eighth enumerated deposition topics, which seek, respectively, "[c]ommunications between Government civil attorneys and any defendant in [this] action (or his counsel)"; and information concerning involvement by Mr. Kinner and Judge DiPietro in recommending or effectuating Wolff's recusal from LBG business activities, termination from LBG, or LBG's efforts to escrow or impede payment of funds to Wolff.

The Court agrees with the Government that Wolff can readily obtain this information from sources other than Mr. Kinner and Judge DiPietro. Both topics

---

[4] As a final preliminary matter, the Court notes that Wolff appears to take the position that Judge Linares' holding that he is entitled to discovery on the Affirmative Defenses, means that he may take *any* discovery on the defenses. *See* ECF No. at, *e.g.*, 13 (relevance of Mr. Kinner and Judge DiPietro's depositions "has already been established and is the law of this case") (emphasis removed). This is a *non sequitur*. Judge Linares' decision merely opened the door for discovery as to the Affirmative Defenses; it did not guarantee that any inquiry into them is necessarily proper.

concern interactions that are necessarily bilateral, involving Government attorneys on one end and other parties on the other. As to the sixth item, there is no reason why Wolff cannot obtain this information from the defendants with whom the Government was communicating. As to the eighth, it stands to reason the Government would have had to recommend these things to someone at LBG and/or effectuate them through individuals at the company — individuals from whom Wolff can seek relevant information to the extent it exists. This reasoning also holds true as to the third enumerated item, which seeks information concerning "[p]articipation by Government attorneys in attempts to settle any part of [this] action prior to the filing of a Complaint-In-Intervention by the United States." As above, such efforts necessarily would have involved the parties with whom Government attorneys were exploring settlement.

If discovery reveals that the Government did these things without involvement from other parties (which the Court finds highly unlikely), Wolff can seek leave to obtain this information from Government witnesses.[5] Unless and until this happens, Wolff's third, sixth, and eighth requests falter on *Shelton*'s first requirement. The remainder of Wolff's requests do not, however, as they appear to seek information within the unique knowledge of Government attorneys. At the very least, "[Mr. Kinner and Judge DiPietro] would be the best source for the information that [Wolff] is seeking." *Mondis*, 2017 WL 4155121, at *3 (finding first *Shelton* prong satisfied).

---

[5] Any such application will also require satisfaction of *Shelton*'s second and third factors.

The Court therefore continues to address the remaining deposition topics under *Shelton*'s second requirement.[6]

### b. Whether the Information Sought is Relevant and Non-Privileged

The relevance element of the second *Shelton* prong appears to be subsumed by the third ("crucial") prong. *Cf., Ditech Fin. LLC v. SFR Invesstments Pool 1, LLC*, 2016 WL 4370034, at *3 (D. Nev. Aug. 15, 2016) ("[F]or information to be crucial, it must have some greater importance to the action than merely being relevant.") (citing *Shelton*, 805 F.2d at 1327). In other words, it is hard to envision information being crucial but not relevant. The Court will therefore focus on the privilege element of *Shelton*'s second prong.

*Mondis* is instructive on this point as well, largely because there, "[t]he affirmative defense of inequitable conduct ma[de] counsel's 'mental impressions . . . an issue in th[e] litigation.'" *Mondis*, 2017 WL 4155121, at *4 (quoting *Environ Prod., Inc. v. Total Containment, Inc.*, 1996 WL 494132, at *4 (E.D. Pa. Aug. 22, 1996)). *Mondis* thus aligns with the Court's holding here allowing the prospect of inquiry into Government attorneys' opinion work product: "[a]lthough the universe of situations

---

[6] The Court briefly addresses the Government's citation to the deposition testimony of LBG counsel Michael Himmel, and Wolff's reference to the certification of his counsel Herbert J. Stern. The Government appears to have submitted Mr. Himmel's testimony to establish (1) that information concerning the Government's prosecution against Wolff would have been established by Himmel, rendering other depositions unnecessary, and (2) that the Government did not act inappropriately as alleged by Wolff. Mr. Stern's certification seeks to rebut the second point. As to the first topic, the Court will not preclude questioning of Government attorneys based on the purported completeness of information obtained from one LBG counsel. (This argument might fare better if made to preclude further depositions of LBG attorneys.) The Court likewise will not give significant weight on this motion to counsel's conflicting and self-serving representations as to the underlying substantive question of the Government's prosecutorial misconduct *vel non*.

where opinion work product is discoverable is narrow, this case falls squarely within it, as here 'the activities of counsel are directly at issue'" by way of the Affirmative Defenses grounded in prosecutorial misconduct. ECF No. 271 at 28 (quoting *Exxon*, 87 F.R.D. at 639). Thus, while Mr. Kinner and Judge DiPietro's testimony is shielded by the attorney-client privilege, it is not necessarily protected by the work product doctrine.[7]

The Court continued in *Mondis*:

> Often in these instances the court will allow the deposition with the possibility of the attorney claiming privilege with respect to certain questions. Courts have found that a blanket prohibition on a deposition is inappropriate . . . . Excusing a witness from being deposed at all requires the court to rule in a vacuum . . . that every question to be asked will seek to elicit privileged information as such courts have found that absent extraordinary circumstances, an order prohibiting the taking of a deposition altogether would likely be in error. . . . Courts have found that impressions protected by the work-product doctrine may be discoverable when relevant and the need is compelling, finding a compelling need exists whenever information is in the exclusive control of the party from whom discovery is sought. Mondis claims that the deposition of [counsel] could involve substantial non-discoverable and privileged information. While this may be true, it is unreasonable to conclude that all of [counsel's] testimony would be privileged. Mondis' argument that [counsel's] mental impressions are protected is flawed . . . . If certain questions are asked that are privileged, [counsel] will be free to object.

---

[7] The Court clarifies that its work product determination "open[s] the door for opinion work product. But for these materials to cross the production threshold, Wolff also must show a compelling need for them." ECF No. 295 at 5-6 (citing cases). For present purposes, this requirement adequately dovetails with *Shelton*'s first and third elements and so will not be analyzed separately. The point that emerges is, as above, the fact that opinion work product is generally discoverable is a necessary but not sufficient factor for Wolff to inquire about matters otherwise protected as work product.

2017 WL 4155121, at *4-5 (citation and quotation marks omitted).

Similar considerations animate the analysis here. The Government's protests that the deposition topics will "necessarily and inevitably" involve Mr. Kinner and Judge DiPietro's mental impressions, ECF No. 319 at 26, is a non-starter, since the Court has held that Wolff is not precluded from discovery into such matters. And while the Government is correct that, like in *Mondis*, Wolff's questioning very well may involve privileged information, there is no basis to conclude that all of Mr. Kinner and Judge DiPietro's testimony will be privileged; contrary to the Government's arguments, none of the remaining deposition topics categorically call for privileged testimony. For example, the Government argues that Wolff's request for information concerning Government attorneys' review, comment, or revision of pleadings prepared by the Relator runs afoul of the Court's holding that communications between Government and Relator counsel are privileged. ECF No. 271 at 11-13. This is true only inasmuch as Mr. Kinner and Judge DiPietro will be asked to testify about *communications* between Government attorneys and Relator's counsel. *See id.* (attorney-client privilege protects *communications* between Government and Relator counsel). To the extent that Wolff seeks testimony concerning Mr. Kinner or Judge DiPietro's review of Relator's pleadings that do not involve such communications, this would be permissible.

While the Court appreciates the Government's concern that Wolff's questioning may wade into privileged waters, this is not a ground to deny the depositions altogether. As stated by the Third Circuit, "[t]here will be ample opportunity for legitimate objections to be raised during depositions if [Wolff]

11

transgresses into forbidden areas. Those objections can be ruled on as they occur without the blanket prohibition" sought by the Government. *Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 565-66 (3d Cir. 1976); *Mondis*, 2017 WL 4155121, at *5 ("If certain questions are asked that are privileged, [the Government] will be free to object."). In this regard, the Court instructs the parties that any substantive objections should be raised with the Court by telephone as they arise, whereupon the Court will rule upon them in real time.

For the reasons stated, the Court concludes that the remaining deposition topics clear *Shelton*'s second requirement. It therefore proceeds to address the final *Shelton* prong.

    c. **<u>Whether the Information Sought is Crucial to Wolff's Defenses</u>**

As indicated above, "for information to be crucial, it must have some greater importance to the action than merely being relevant." *Ditech*, *supra*. "'Crucial' information includes information necessary for the survival of a claim or defense." *Hanover Ins. Co. v. Terra S. Corp.*, 2019 WL 5963986, at *8 (D. Nev. Nov. 12, 2019) (citing *Mid-Century Ins. Co. v. Wells*, 2013 WL 12321555, at *3 (D. Nev. June 17, 2013)).

Turning to Wolff's remaining topics, the most patently crucial information appears in the fifth item, which seeks information concerning "[t]he preparation, content, and filing of sealing applications in [this] action, including any representations made therein." The Affirmative Defenses grow directly from the Government's sealing applications, *i.e.*, the Government's alleged "failure and refusal

to timely unseal the docket and filings in this action in order to gain improper advantages over Mr. Wolff". ECF No. 143, Fifth Separate Defense. Subject to the condition stated shortly below, inquiry into these matters is proper.

Items 1 and 2 also relate to the Affirmative Defenses, but somewhat less directly. These topics concern the Government's control of and participation in this matter before the Government's filing of a Complaint-in-Intervention in July 2016. *See* ECF No. 83. Unlike Wolff's fifth request, these items encompass a far wider breadth of information than that "necessary for the survival of [Wolff's] defense[s]". *Hanover, supra.* At the same time, it stands to reason that information responsive to these requests may support the Affirmative Defenses.

The Court thus turns to the seventh category of information sought by Wolff; that concerning "[t]he Separate Defenses alleged by the Defendant, Derish M. Wolff, in [this] action." The Court finds this request too vague to constitute a standalone deposition topic. At the same time, this verbiage is critical to the Court's entire decision on this matter. To wit: *any* questioning of Mr. Kinner and Judge DiPietro must bear upon the Affirmative Defenses. Thus, if a subject falls into an otherwise permitted category but is not crucial — not merely relevant — to proving (or disproving) Wolff's Affirmative Defenses, the inquiry is prohibited.

The Court therefore rules as follows. Wolff may inquire into any matter falling within his first, second, or fifth enumerated deposition topics, provided that it also falls into the seventh. In other words, Wolff may question Mr. Kinner and Judge DiPietro about (1) the preparation, content, and filing of the Government's sealing

applications; (2) the Government's control of or involvement in this action prior to the filing of its Complaint-In-Intervention; or (3) participation by Government attorneys in the action prior to such filing, so long as any such questioning is also crucial to proving Wolff's Affirmative Defenses.[8]

## V. Depositions of Other Attorneys

While the Government's motion centers on the depositions of Mr. Kinner and Judge DiPietro, it also requests a protective order barring the depositions of other civil attorneys and counsel who participated in the overlapping criminal investigation and prosecution.[9] Wolff's opposition does not directly address these individuals.

The Court will grant the Government's motion without prejudice as to these attorneys. Wolff fails to explain why depositions of counsel other than Mr. Kinner and Judge DiPietro will advance the Affirmative Defenses.[10] Absent argument or evidence that this is the case, the Court views requests for additional depositions as constituting an improper fishing expedition, particularly considering the general hesitancy toward granting depositions of counsel. *See, e.g.*, *Linerboard*, 237 F.R.D. at

---

[8] As to the fourth enumerated topic, any discoverable information would appear to also fall under the first or second topics. Moreover, information responsive to this item is likely to be privileged. *See* ECF No. 271 at 11-13 (communications between Government and Relator counsel are privileged). The Court therefore denies Wolff's standalone request as to the fourth deposition topic. However, Wolff may question Mr. Kinner and Judge DiPietro on these matters to the extent such questioning falls under one of the permitted topics and is not privileged.

[9] The Government represents, and Wolff does not contest, that Wolff has signaled his intention to take several such depositions. *See* ECF No. 279 at 3 n.2.

[10] This is particularly true as to the criminal attorneys. It is difficult to envision information supporting the Affirmative Defenses being within the knowledge of criminal prosecutors but not civil attorneys.

384 (argument that counsel's "knowledge is required to fill in gaps in [other deponents'] testimony" insufficient under *Shelton*). This decision is without prejudice to Wolff seeking leave for such depositions upon a specific showing that these individuals are likely to possess discoverable information not in the possession of Mr. Kinner or Judge DiPietro.

## VI.  Conclusion

An Order consistent with this Opinion follows.

Dated: March 23, 2022

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.
